

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

November 13, 2023

**BY ECF**

The Honorable Valerie E. Caproni
United States District Judge
Southern District of New York
40 Foley Square
New York, NY 10007

    Re:    *United States v. Chinwendu Alisigwe*, S1 22 Cr. 425 (VEC)

Dear Judge Caproni:

    The Government respectfully submits this letter in advance of the suppression hearing scheduled for Friday, November 17, 2023 in the above-captioned case, regarding the Government's seizure of four fraudulent passports and corresponding driver's licenses at the time of the arrest of the defendant, Chinwendu Alisigwe.

    **I.**    **Background**

    On July 25, 2022, Alisgiwe was charged by complaint with violations of 18 U.S.C. §§ 1349 (conspiracy to commit bank fraud), 1343 (bank fraud), and 1028A (aggravated identity theft). He was arrested the following day and presented before United States Magistrate Judge Sarah Netburn, who ordered Alisigwe detained. A grand jury sitting in this District returned an indictment on August 4, 2022, charging Alisigwe with the same offenses set forth in the complaint. On August 17, 2023, the grand jury returned a superseding indictment, adding a fourth count: conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h). (Dkt. 62).

    The charges in this case arise from Alisigwe's participation in a wide-ranging fraud and money laundering conspiracy from approximately November 2016 through January 2023. In furtherance of the criminal conspiracy, Alisigwe opened bank accounts using fraudulent passports and other false identity documents in the names of other individuals, but bearing Alisigwe's photograph. After the accounts were opened, hundreds of thousands of dollars from fraud schemes were deposited into the accounts fraudulently opened by Alisigwe. After Alisigwe received the fraud proceeds, he would withdraw some for himself, and transfer other fraud proceeds to other accounts, including accounts outside of the United States. Certain victims suffered significant losses from this scheme.

    Alisigwe was actively engaged in this criminal conduct until his arrest. At the time of Alisigwe's arrest at his home on July 26, 2022, during a protective sweep of the premises, Special

Agent William McKeen of the Federal Bureau of Investigation observed, in plain view, four passports inside Alisigwe's bedroom. Like the false identity documents that Alisigwe had previously used to fraudulently open bank accounts, the fraudulent passports bore Alisigwe's photograph but the names of others. Inside each of the fraudulent passports was a matching fraudulent driver's license. Because these passports and licenses were observed in plain view and immediately recognizable to Special Agent McKeen as contraband, they were seized.

On January 6, 2023, Alisigwe moved to suppress (1) certain statements Alisigwe made to law enforcement at JFK International Airport; (2) the results of two manual reviews of Alisigwe's phone conducted by agents at JFK International Airport; (3) the fraudulent passports and licenses seized at Alisigwe's arrest by Special Agent McKeen; and (4) certain fraudulent passports seized from the mail by U.S. Customs and Border Protection. (Dkt. 28). As relevant here, Alisigwe moves to suppress the fraudulent passports and licenses seized at his arrest based on a factual assertion that they were not in plain view, but rather in an envelope underneath Alisigwe's bed. (Dkt. 59, ¶¶ 18-21).

The Government filed its response to Alisigwe's motion to suppress on August 4, 2023. The motion remains pending. With respect to the passports and licenses seized at Alisigwe's arrest, the Government argues that Alisigwe is both factually and legally wrong, but it has conceded that a hearing is necessary to resolve the factual dispute raised by Alisigwe. (Dkt. 57 at 17).[1] The suppression hearing regarding the passports and licenses seized at Alisigwe's arrest is scheduled for November 17, 2022. (Dkt. 76).

## II.   Relevant Legal Standard

"An arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." *Payton v. New York*, 445 U.S. 573, 603 (1980). Thus, law enforcement officers "[g]enerally do not need a search warrant to enter a suspect's home when they have an arrest warrant for the suspect." *United States v. Lauter*, 57 F.3d 212, 214 (2d Cir. 1995). Once inside a suspect's home, officers may then perform a "protective sweep" to protect themselves or others. *Id*. at 216. A protective sweep permits officers to inspect "immediately adjoining" rooms, and "those spaces where a person may be found." *United States v. Alejandro*, 100 F. App'x 846, 848 (2d Cir. 2004).

Under the "plain view" doctrine, "if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant." *United States v. Delva*, 858 F.3d 135, 149 (2d Cir. 2017) (quoting *Minnesota v. Dickerson*, 508 U.S. 366, 375 (1993)). That is because, "[i]f an article is already in plain view, neither its observation nor its seizure would involve any invasion of privacy." *Id*. (quoting *Horton v. California*, 496 U.S. 128, 133 (1990)). Thus, "when law enforcement officers have lawfully entered premises in connection with an arrest, and in the course of making a permissible quick and limited protective sweep of the premises they

---

[1] The remaining issues raised in Alisigwe's suppression motion are legal in nature and no hearing is necessary to resolve them. The Court has ordered a hearing only on whether the seizure of the passports and licenses from Alisigwe's residence upon his arrest was lawful. (Dkt. 58).

see an object whose incriminating character is immediately apparent, 'and if the officers have a lawful right of access to the object, they may seize it without a warrant.'" *Id*. (quoting *Dickerson*, 508 U.S. at 375). This is so even where "the discovery of the evidence was not inadvertent." *Id*. (quoting *Horton*, 496 U.S. at 130 ("[E]ven though inadvertence is a characteristic of most legitimate 'plain-view' seizures, it is not a necessary condition.")).

### III.   Anticipated Evidence

The Government respectfully submits that the evidence will show that law enforcement's seizure of the fraudulent passports and licenses at issue was lawful.

The Government expects that Special Agent McKeen will testify that law enforcement breached the door of Alisigwe's residence after knocking and announcing their presence, but receiving no answer. Law enforcement then encountered Alisigwe coming out of his bedroom and placed him under arrest. After placing Alisigwe under arrest, Special Agent McKeen accompanied Alisigwe into the bedroom so that Alisigwe could change into appropriate clothing before departing to the courthouse.

Upon entering the bedroom, Special Agent McKeen and another agent conducted a protective sweep of the bedroom, and during that protective sweep, Special Agent McKeen observed a stack of four passports on the floor of the bedroom, to the side of the bed. The passport on the top of the stack appeared to be a Kenyan passport. Special Agent McKeen knew based on his involvement in the investigation that Alisigwe is a citizen of Nigeria, and that Alisigwe was suspected of having used multiple false identification documents in connection with a criminal conspiracy. As a result, Special Agent McKeen immediately recognized that the stack of passports was likely contraband, and he seized them. Upon further review, Special Agent McKeen discovered that each passport bore Alisigwe's photograph but another person's name, and also that inside each passport was a matching driver's license.

The Government submits that this evidence will establish that the passports and licenses were neither in an envelope nor under Alisigwe's bed. Instead, they were found in plain view during a protective sweep, and their seizure was thus permissible. The Court should therefore deny Alisigwe's motion.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By: /s/
William C. Kinder
Meredith Foster
Assistant United States Attorneys
(212) 637-2394 / 2310

Cc:   Ariel Werner, Esq. (by ECF)
      Sylvie Levine, Esq. (by ECF)